IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 3:12-CR-137-REP |
| v. | ) | |
| | ) | |
| KOLON INDUSTRIES, INC., | ) | |
|     Including and through its | ) | |
|     successors "Kolon Industries, Inc." | ) | |
|     and "Kolon Corporation" | ) | |
| JONG-HYUN CHOI, | ) | |
| IN-SIK HAN, | ) | |
| JU-WAN KIM, | ) | |
| KYEONG-HWAN RHO, | ) | |
| YOUNG-SOO SEO, | ) | |
| | ) | |
|     Defendants. | ) | |

**SUR-SUR-SUR-REPLY IN OPPOSITION TO MOTION TO QUASH SERVICE AND TO DISMISS THE SUPERSEDING INDICTMENT**

In response to this Court's order of August 8, 2013 (Dkt. No. 91), the United States of America, by and through the undersigned attorneys, respectfully submits this sur-sur-sur-reply in opposition to the motion of Kolon Industries, Inc. and Kolon Corporation (collectively, the "successor defendants") to quash service and to dismiss the superseding indictment. This sur-sur-sur-reply is limited to addressing the issues identified in the Court's order, namely:

> (1) Whether Korean or United States law governs the definition of "agent appointed or legally authorized to receive service of process" as defined in Fed. R. Crim. P. 4(c)(3)(C) in this case; and,
> (2) Whether delivery of the summons to Man Ho Kim by mail constitutes proper service, under United States and/or Korean law, on Kolon Industries or Kolon Corporation.

Dkt. No. 91 at 1.

1. **Because Service Occurred in the Republic of Korea Pursuant to the U.S.-Korea MLAT, Criminal Rule 4's Reference to an Agent "Legally Authorized to Receive Service of Process" Should Be Read to Include Korean Law on Service of Process**

In interpreting the so-called delivery requirement of Criminal Rule 4, this Court must start with the text of the requirement: "A summons is served on an organization by delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process." Fed. R. Crim. P. 4(c)(3)(C). Nothing in this text defines or limits the sources of law that may render an agent "legally authorized to receive service of process." The rule does not say "legally authorized under federal law" or "legally authorized under the laws of the United States," nor does it in any other way qualify the term "legally authorized to receive service of process." The term "legally authorized to receive service of process" is not defined elsewhere in the Criminal Rules.[1]

As this Court is well aware, only a handful of cases have interpreted the delivery requirement of Rule 4(c)(3)(C). Despite a diligent search, the United States has not identified any case addressing the applicable sources of law that may render an agent "legally authorized to receive service of process" under this rule. However, as the successor defendants concede, this Court should look to the interpretation of analogous language in the Civil Rules. See Dkt. No. 88 at 3-4 & n.3 (argument by the successor defendants relying on cases interpreting a delivery requirement of the Civil Rules). The Civil Rules contain delivery requirements that are virtually identical to the language at issue here. In particular, Civil Rules governing delivery of a summons on an individual and on a corporation both provide, in relevant part, that service may

---

[1] The United States does not maintain that service in this case occurred on an agent who was "appointed" by the successor defendants to receive service of process. Criminal Rule 4 makes clear, however, that an agent may be "appointed **or** legally authorized to receive service of process" (emphasis added), so an agent need not be formally appointed by the defendants in order for service to be successful.

be accomplished by delivering a copy of the summons to an "agent authorized by appointment or by law to receive service of process."  <u>See</u> Fed. R. Civ. P. 4(e)(2)(C), 4(h)(1)(B).

Federal courts have refused to cabin the scope of these provisions to a particular source of law.  As two leading commentators have observed, "the word 'law' [in the Civil delivery provisions] stands judicially undefined despite the more than sixty years that have transpired since the adoption of the Federal Rules of Civil Procedure."  Wright and Miller, Federal Practice and Procedure § 1098.  Indeed, the only notable limitation on the scope of these provisions stems from decisions that "state or intimate that the language ['by law'] refers to an agent authorized by legislative enactment to receive process, rather than one authorized by common law, or estoppel, or the general doctrines of agency."  <u>Id</u>. (collecting cases).  Here, the United States is not relying on any sources of law other than statutes.

Critically, numerous federal courts have interpreted the term "agent authorized . . . by law to receive service of process" to include statutes of the jurisdiction where service occurred.  Thus, for example, the D.C. Circuit held that "[t]he phrase 'by law' refers to statutory provisions for substituted service," noting that "[m]any states have statutes authorizing substituted service."  <u>Neslon v. Swift</u>, 271 F.2d. 504, 505 (D.C. Cir. 1959).  To take a more recent example in the context of service upon a corporate defendant, in <u>Naranjo v. Universal Surety of America</u>, the court found that service upon the Texas secretary of state satisfied the requirement of delivery upon a legally authorized agent because Texas law authorized such service for non-resident corporations.  679 F.Supp.2d 787, 796-97 (S.D. Tex. 2010).  Notably, the court found service to be authorized "by law" even though it was alleged that the secretary of state failed to take certain steps required under Texas law after being served.  <u>See id</u>. at 797.  The court noted that it was not relying on a separate provision of the Civil Rules authorizing service pursuant to state law,

but rather on the provision finding delivery complete once the summons was delivered to an agent legally authorized to receive it on behalf of the defendant.  Id. at n.3.  The fact that Texas law granted such status to the secretary of state was sufficient for jurisdiction to attach.

Similar examples abound.  See, e.g., S&S Industries, Inc. v. Nakamura-Tome Precision Industries, Co., 93 F.R.D. 564, 566-69 (D. Minn. 1982) (noting that "there is authority that an agent 'authorized . . . by law' can be one authorized by State law, such as a secretary of state"); Alloway v. Wain-Roy Corporation, 53 F.R.D. 85 (E.D.Pa. 1971) ("Rule 4(d)(3) [now Rule 4(h)(1)(B)] of the Federal Rules of Civil Procedure authorizes service upon a statutory agent, and Pennsylvania has designated the Secretary of the Commonwealth to receive such process on behalf of corporations which are doing business within the state."); Joyner v. S. Kirkland Hide Company, 210 F.Supp. 739, 740-41 (E.D.S.C. 1962) (holding that service pursuant to South Carolina law authorizing service upon "any person of discretion residing at the residence or employed at the place of business of the defendant" satisfied the requirements of what is now Federal Rule 4(h)(1)(B)); Joe Hand Promotions, Inc. v. Citibars, Inc., 2012 WL 503212 at *1-*2 (E.D.Va. Feb. 8, 2012) (unpublished) (finding service proper under the Federal Rules, including delivery to an "agent . . . authorized by law," based upon substitute service pursuant to Virginia law on the Virginia State Corporation Commission); see also Wooldridge v. Beech Aircraft Corporation, 479 F.Supp. 1041, 1052-53 (W.D.Mo. 1979) (noting that the scope the delivery requirement is "to some extent governed by federal law," but proceeding to decide the issue by analyzing a state statute for substitute service).[2]

---

[2] Indeed, the case law permitting consideration of state statutes in determining who is an "agent authorized . . . by law to receive service of process" is so well established that Wright and Miller conclude that the practical scope of this provision is the same as that of separate service provisions of the Civil Rules allowing for service pursuant to state law.  See Federal Practice and Procedure § 1098 ("the federal courts have not drawn distinctions between former Rule 4(d)(1)

The decisions cited above relied on the laws of jurisdictions where service occurred despite the fact that such laws did not expressly reference service in a federal lawsuit. See, e.g., Va. Code § 13.10637(B) (cited in Joe Hand Promotions, Inc., 2012 WL 503212 at *2) ("Whenever a corporation fails to appoint or maintain a registered agent in this Commonwealth, or whenever its registered agent cannot with reasonable diligence be found at the registered office, then the clerk of the Commission shall be an agent of the corporation upon whom service may be made"); S.C. Code § 10-438 (1952) (cited in Joyner, 210 F.Supp. at 740) ("In all cases other than those hereinbefore mentioned the summons shall be served by delivering a copy thereof to the defendant personally or to any person of discretion residing at the residence or employed at the place of business of the defendant."). Thus, the relevant question for purposes of the delivery requirement is whether a statute generally authorizes service upon a particular individual, not whether that statute expressly contemplates the operation of the Federal Rules of Procedure.

Accordingly, the case law plainly supports the conclusion that the term "authorized by law," Fed. R. Civ. P. 4(e)(2)(C), 4(h)(1)(B), includes the laws of the jurisdiction where service occurred. While Criminal Rule 4(c)(3)(C) references an agent "legally authorized to receive service of process," the United States submits that there is no logical reason for interpreting the term "legally authorized" less broadly than the "authorized by law" language of the Civil Rules.

---

or present Rule 4(e)(2) [providing for service pursuant to state law of the state where the District Court is located or where service is made] or between former Rule 4(c)(2)(C)(i) or present Rule 4(e)(1) [providing for service on an agent authorized by law] with regard to service upon individuals by delivery of process to statutorily designated agents"); id. § 1101 (referencing the same analysis with respect to service upon corporations); but see Naranjo, 679 F.Supp.2d at 796-97 & n.3 (finding that provision on serving agent authorized by law is broader than provision for service based on state law, in that service under the former provision is proper even if the statutory agent fails to follow certain requirements for forwarding process to the defendant).

Moreover, while the decisions cited above deal with service pursuant to state law, the United States submits that this Court should grant similar respect to the laws of another country where, as here, service occurs in that country.  The text of the delivery requirement provides no basis for considering state law, but not the law of a foreign nation, in interpreting the term "legally authorized."  This Court already held that service of a criminal summons in Korea is authorized by the service provisions of the Mutual Legal Assistance Treaty (MLAT) between the United States and Korea.  See Dkt. No. 44 at 51.  The MLAT merely requires that Korean Authorities use their "best efforts" to effectuate such service, and does not specify the manner in which service should be accomplished.  See Treaty with the Republic of Korea on Mutual Legal Assistance in Criminal Matters, U.S.-S.Kor., S. Treaty Doc. No. 104-1, Art. 14, § 1 (entered into force May 23, 1997).  Given the absence of any specific method of service in the MLAT and the open-ended language of the delivery requirement, it makes little sense to interpret the latter as mandating delivery under a set of laws other than those of the nation that is carrying out the MLAT request.

Finally, in determining the applicable source of law, the Court should be mindful of the many policy reasons for relying upon Korean law in adjudicating the method of service in this case.  In this regard, the observations of the Wright and Miller treatise on the Rules of Civil Procedure carry even more weight in the criminal realm.  Wright and Miller observe that:

> Some countries view service of process within their borders in connection with litigation pending elsewhere as a "judicial," and therefore a "sovereign," act that is offensive to the policies or contrary to the law of the particular country. Furthermore, a foreign country is more likely to honor or enforce a judgment rendered in the United States if original service is made in a fashion familiar to the country in which enforcement is sought and consonant with its notions of fairness.

6

Federal Practice and Procedure §1133.  Here, the Republic of Korea did in fact view service of criminal process as a judicial act, and thus the MLAT request was forwarded to the Korean Supreme Court, and eventually to the local District Court, for execution.  The repeated efforts at service ordered by the Korean Courts show their clear preference for delivering summonses by mailman and having them signed for by a mail clerk of the defendant corporations.  For reasons the United States has set forth in prior briefing and will again in Section 2 of this brief, such service was proper under Korean law.  And precisely because such service was ordered by the Korean Courts and was carried out pursuant to Korean law, it is far more likely to result in proper notice to the defendants and further cooperation from Korean authorities than would insisting on a different method of service that is unfamiliar to Korean authorities and to the Korean corporations charged in this case.

In sum, the text of the delivery requirement of Criminal Rule 4(c)(3)(C), judicial decisions interpreting nearly identical language in the Civil Rules, and the policy considerations implicated in serving and prosecuting foreign corporations all favor interpreting the term "agent . . . legally authorized to receive service of process" to include the service laws of the foreign nation where service actually occurred.

## 2. Delivery of the Summons to Man Ho Kim By Mailman Constitutes Proper Service on a "Legally Authorized" Agent of the Successor Defendants Under Korean Law

In its prior sur-reply, the United States cited and appended the applicable provisions of Korean Law on service of process.  See Dkt. No. 84 at 7-10 & Exhibits 3-4 (Dkt. Nos. 84-3 & 84-4).  Korean law generally provides for the same methods of service in civil and criminal cases.  See Korean Criminal Procedure Act, Art. 65.  Those methods include that "[s]ervice shall be carried out by mail or an execution officer, or in such a manner as prescribed by the Supreme Court Regulations," Korean Civil Procedure Act, Art. 176, cl. (1); that "[s]ervice by mail shall be

7

carried out by a mailman," id., Art. 176, cl. (2); that "[s]ervice shall be made at the domicile,

residence, business place or office of the person on whom service is to be made . . . [p]rovided,

[t]hat a service to be made on a legal representative may be effected even at the business place or

office of the principal," id., Art. 183, cl. (1); and that "[w]hen a recipient of service has been

unavailable at the place of service other than his work place, the document may be delivered to

his clerk, employee or co-habitant, who is [a] man of sense," id., Art. 186, cl. (1).

Here, there is no dispute that service was accomplished by mailman. There is no serious

dispute that service occurred at the joint headquarters of the successor defendants. There is no

dispute that the summonses were personally delivered to, and signed for by, Man Ho Kim, who

is an employee of Kolon Industries, Inc. The successor defendants nonetheless raise a litany of

challenges to the propriety of service, which the United States will address in turn.

The successor defendants argue that service by mail cannot satisfy the delivery

requirement, citing federal civil cases rejecting service by mail and requiring personal service.

See Dkt. No. 88 at 3-4. This argument lacks merit, for two reasons. First, none of the cases cited

by the successor defendants interpreted Korean law on service of process. Second, and critically,

personal service did occur in this case, in that the mailman summoned Man Ho Kim, delivered

the summonses to him, and had him sign a delivery notice. See Dkt. No. 88-4 at ¶9 (Declaration

of Man Ho Kim) ("The mailman telephoned and asked me to come to Mauna Ocean's central

mail processing room [in the basement of Kolon Tower] to meet him. The mailman gave me

four envelopes from the Suwon District Court. The mailman told me to sign on a screen of a

handheld mechanical device to confirm delivery of the mail and told me where I should sign.").

If—as the United States contends—Man Ho Kim qualifies as an agent legally authorized to

8

accept service of process on behalf of the successor defendants, then it is beyond dispute that the delivery was accomplished through personal service.[3]

The successor defendants argue that they did not authorize Man Ho Kim to accept service of process.  See Dkt. No. 88 at 7; Dkt. No. 88-4 at ¶7.  This is beside the point.  Criminal Rule 4(c)(3)(C) applies to any agent "appointed **or** legally authorized to receive service of process." Fed. R. Crim. P. 4(c)(3)(C) (emphasis added).  Use of the disjunctive "or" demonstrates that a legally authorized agent need not be appointed by the defendant.  See, e.g., Hardy v. O'Daniel, 16 F.R.D. 355 (D.D.C. 1954) ("It seems to the Court that the rule should be construed as related to an agent expressly authorized by appointment of the defendant to receive process on his behalf, or an agency created by statute to receive service of process").  This interpretation is supported by cases finding state officers to be legally authorized agents of corporate defendants for service of process, despite the fact that those defendants had not taken any formal steps to appoint the state officers as their agents.  See, e.g., Naranjo, 679 F.Supp.2d at 796; S&S Industries, Inc., 93 F.R.D. at 566-69; Alloway, 53 F.R.D. at 85; Joe Hand Promotions, Inc., 2012 WL 503212 at *1-*2.

---

[3] While this Court should determine the propriety of service on Man Ho Kim by reference to Korean law, the United States notes for the record that cases interpreting federal or state law have, on occasion, found the delivery requirement met without personal delivery to the defendant or his agent for service of process.  See, e.g., Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc., 840 F.2d. 685, 688 (9th Cir. 1988) (holding that delivery requirement is "to be applied in a manner that will best effectuate [its] purpose of giving the defendant adequate notice" and finding service on defendant's receptionist was proper, even though receptionist was not employed by the defendant); Just Enterprises, Inc. v. O'Malley & Langan, P.C., 560 F.Supp.2d 345, 352 (M.D.Penn. 2008) (finding service on receptionist of defendant law firm to be proper); Krape v. PDK Labs, Inc., 194 F.R.D. 82, 85 (S.D.N.Y. 1999) (finding service on defendant's receptionist proper, even though receptionist indicated that she could not accept service); Sellens v. Telephone Credit Union, 189 F.R.D. 461, 465 (D. Kan. 1999) (finding service on secretary located at entry to defendant's business to be proper).  Accordingly, even if the Court were to reject the government's arguments with respect to Korean law, there would still be a basis in the record for finding the delivery requirement met in this case.

The successor defendants argue that Man Ho Kim is not an agent legally authorized to accept service of process because the provision of Korean law authorizing service upon a "clerk, employee or co-habitant" of the defendant, Korean Civil Procedure Act, Art. 186, cl. (1), does not use the term "agent" or "agency."  See Dkt. No. 88 at 6.  This argument is contradicted by federal court decisions finding that state laws can create a service of process agency despite not using words such as "agent" or "agency."  For instance, the South Carolina law relied upon in Joyner, 210 F.Supp. at 740, provided that "[i]n all cases other than those hereinbefore mentioned the summons shall be served by delivering a copy thereof to the defendant personally or to any person of discretion residing at the residence or employed at the place of business of the defendant."  S.C. Code § 10-438 (1952).  Despite the law's failure to use terms such as "agent" or "agency," the court found that a manager at the defendant's business was a legally authorized "agent" for service of process.  See Joyner, 210 F.Supp. at 741 (refusing to find that "the agent served in the case was "an inappropriate vehicle for communicating the notice" to the defendant).  Similarly, Minnesota law cited in S&S Industries, Inc., 93 F.R.D. at 567, refers to an "attorney" for service of process rather than an "agent":

> If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if a foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the state of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of the contract or tort.

Minn. Stat. 303.13, subd. 1(3) (1980).  The court nonetheless found that the secretary of state was an "agent for the service of process."  See S&S Industries, Inc., 93 F.R.D. at 567.

The successor defendants argue that Man Ho Kim cannot be an agent of Kolon Corporation because he is employed only by Kolon Industries, Inc.  See Dkt. No. 88 at 9-10. However, several cases support the finding of legally authorized agency in circumstances similar to this case.  Wright and Miller reference Heijher v. Erie Railroad Co., 171 F.Supp. 174 (S.D.N.Y. 1959), as "[i]llustrative[]" of the scope of agency for purposes of delivery on related corporations.  See Federal Practice and Procedure §1104.  In Heijher, summonses for defendants Erie Railroad and New Jersey & New York Railroad were served on an individual who was employed only by Erie Railroad.  The court nonetheless found service proper as to both defendants, based on a finding that the individual who was served performed tasks for both companies.  See 171 F.Supp. at 176-77.  The court also noted that the second defendant paid lump sums to the first for various services, including operation of the station where the individual worked.  See id.  A similar analysis applies in the case of service on parent and subsidiary corporations.  See Orefice v. Laurelview Convalescent Center, Inc., 66 F.R.D. 136, 142 (E.D.Penn. 1975) (holding that an employee of a parent company qualified as an agent for service of process to its subsidiary, even though he was not employed by the subsidiary).

The facts before the Court support a finding that Man Ho Kim was legally authorized to accept service for both successor defendants.  While the defendants now assert that they are located on different floors of a building known as "Kolon Tower," see Dkt. No. 88 at 12-13; Dkt. No. 88-4 at ¶2, in their own corporate filings, they list the entire building—and not any particular floor—as their address.  See Dkt. No. 88-1 at 9 (exhibit to defendants' sur-reply showing that Kolon Corporation listed an address of "1-23 Byulyang-dong, Gwacheon-si," without any limitation as to floor number); id. at 12 (listing post-spin-off address for Kolon Industries, Inc. as also being "1-23 Byulyang-dong, Gwacheon-si").  The fact that the parent (Kolon Corporation)

has chosen to assign mailroom duty to an employee of the subsidiary (Kolon Industries, Inc.) does not render that employee any less authorized to accept service of process on behalf of the parent, particularly since Korean law expressly authorizes service on individuals other than employees of the defendant.  See Korean Civil Procedure Act, Art. 186, cl. (1) (authorizing service on a "clerk, employee or co-habitant" of the defendant).

The successor defendants argue that Article 186 of the Korean Civil Procedure Act does not apply here, because it contains a method of supplementary service that should not be attempted unless "a recipient of service has been unavailable at the place of service other than his work place."  Korean Civil Procedure Act, Art. 186, cl. (1).  In particular, the successor defendants argue that the mailman, prior to serving Man Ho Kim, should have attempted to personally serve the purported Chief Executive Officers of the successor defendants, Dong Moon Park and Nam Soo Kim.  See Dkt. No. 88 at 12-14.  The Court should reject this argument for two reasons.

First, Dong Moon Park and Nam Soo Kim are not defendants in this case, and the United States requested that they be served in addition to—and not in lieu of—service upon the successor defendants at their joint headquarters.  See Dkt. No. 52-1 at 3-4 ¶¶1-2.  Second, the assertion by Man Ho Kim that the mailman "did not ask me if he could speak directly with Dong Moon Park or Nam Soo Kim, or anyone else at Kolon Industries, Inc. or Kolon Corporation," Dkt. No. 88-4 at ¶10, is immaterial.  The delivery confirmations executed by the mailman, and forwarded by the Korean Courts as proof of the execution of the MLAT request, contain the mailman's attestation that he was "[u]nable to meet the recipient" and that he "delivered [the summonses] to . . . [an] Office Clerk or Employee at the Recipient Business."  See Dkt. No. 52-2 at 16 & 18 (government's translation of the delivery notices); Dkt. No. 88-2 at 8 & 10 (successor

defendants' translation, identical with respect to the quoted language).  Whether this language is interpreted as signifying that the recipient is a "legal" person who cannot be "met" prior to recourse to delivery to his clerk or employee, or whether it is meant to refer to additional, undescribed steps taken by the mailman prior to serving Man Ho Kim, the delivery confirmations—which are the Korean equivalent of a signed return of service—evidence the fact that recourse to Article 186 was proper in this case.  See Pollard v. District of Columbia, 285 F.R.D. 125, 127-28 (D.D.C. 2012) ("a signed return of service . . . constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence").[4]

In addition, in determining whether service was proper under Korean law, this Court should not lose sight of the fact that Korean Courts have repeatedly ordered the execution of MLAT requests for service by directing a mailman to deliver the summonses to an office clerk or employee of the defendants.  See Dkt. No. 52-2 at 16 & 18 (service of summons issued upon the superseding indictment by mail delivery to Man Ho Kim); Dkt. No. 25-1 at 3 (service of summons issued upon the original indictment by mail delivery to Man Ho Kim).  If the successor

---

[4] The successor defendants' remaining arguments pursuant to Korean Law are meritless.  While the defendants assert that there is no evidence that Man Ho Kim was a "clerk" of Kolon Corporation, see Dkt. No. 88 at 9 n.6, he is identified in the delivery confirmation as an "Office Clerk or Employee at the Recipient Business."  See Dkt. No. 52-2 at 16 & 18 (government's translation of the delivery notices); Dkt. No. 88-2 at 8 & 10 (successor defendants' translation, identical with respect to the quoted language).  The available facts amply support the inference that Man Ho Kim is an individual entrusted to deal with the mailroom and to pick up mail.  Such a role makes him a clerk, whether or not that was his nominal title.  See Meriam Webster's Collegiate Dictionary at 214 (10th Ed. 1997) (defining "clerk" as, inter alia, "one employed . . . to perform general office work").  The argument that the mailroom is operated by a separate company, Mauna Ocean, see Dkt. No. 88 at 13, is beside the point, because this would appear to render Mauna Ocean a co-habitant of the successor defendants, and in any event because the mailman met directly with Man Ho Kim and served process on him and not on any agent or employee of Mauna Ocean.  Defendants' challenges to service of corporate summonses to Dong Moon Park and Nam Soo Kim, see Dkt. No. 88 at 11-12, are also beside the point, since the United States has made clear that it is relying on the service of summonses to the successor defendants through Man Ho Kim.  See Dkt. No. 84 at 9 n.2 ("Because service of summonses upon Man Ho Kim satisfies the delivery requirement as to the successor defendants, the Court need not assess the validity of these additional efforts at service.").

defendants truly believed that Man Ho Kim was not authorized to accept process for them, they should have relieved him of his mailroom duties after he accepted the original, untimely summons, or should have instructed their mail staff not to accept any further process.  The successor defendants did nothing of the kind, and their failure to do so evidences the fact that they are bound by Korean law permitting delivery of process by mail.[5]

Finally, the Court should consider the steps taken by the United States to ensure proper delivery in this case.  In the latest MLAT request, the United States not only asked that the summons be served on the successor defendants at their joint headquarters, but also asked for personal service upon the Chief Executive Officers of the successor defendants.  See Dkt. No. 52-1 at 3-4 ¶¶1-2.  The MLAT request went on to state that:

> **If the methods of service requested are not valid under Korean law**, then please deliver the summonses and superseding indictment to authorized representatives of Kolon Industries, Inc. and Kolon Corporation no later than May 7, 2013, **in a manner consistent with service of documents under Korean law** intended to give timely notification to Kolon Industries, Inc. and Kolon Corporation of the requirement for their appearance in the U.S. District Court on June 7, 2013.

Id. at 4 ¶4 (emphases added).  The Korean Courts responded to this request by causing the successor defendants to be served by mail delivery to Man Ho Kim, and not by personal service on the Chief Executive Officers.  Given that the MLAT request specifically asked for service in compliance with Korean law, the method of service ordered by the Korean Courts evidences the fact that service in fact complied with Korean law.  Such evidence, coupled with the executed delivery notices that track the applicable provisions of Korean law and the Court certificates of

---

[5] In consultations with representatives of the U.S. Departments of Justice and State regarding this case, the Korean Ministry of Justice indicated that corporate defendants charged with criminal violations in Korea may be served by mail delivery of process, and that companies so served are required to appear in court.

execution of the MLAT request that have been filed in this case, is more than sufficient to carry the United States' burden of showing that service was properly effected.

For all the above reasons, this Court should find that service of process upon the successor defendants was carried out in compliance with Korean law.

**<u>Conclusion</u>**

For the reasons stated herein and in the United States' prior sur-reply, the United States submits that this Court should reject the successor defendants' belated challenge pursuant to the delivery requirement of Federal Rule of Criminal Procedure 4(c)(3)(C).  To the extent it is relevant to the Court's analysis of the service issue in this case, the Court should find that the government has met the delivery requirement as to both successor defendants.


Respectfully submitted,

Neil H. MacBride
United States Attorney


_____/s/_____
Kosta S. Stojilkovic
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3700
(703) 299-3981 (fax)
kosta.stojilkovic@usdoj.gov


_____/s/_____
Michael S. Dry
Assistant United States Attorney
600 East Main Street, Suite 1800
Richmond, VA 23219
(804) 819-5400
(804) 771-2316 (fax)
michael.s.dry@usdoj.gov

Jeffrey H. Knox
Chief, Fraud Section

_____/s/_____

John W. Borchert
Trial Attorney, Fraud Section
Criminal Division, Department of Justice
1400 New York Avenue, N.W.
Washington, DC  20530
(202) 514-0890
(202) 616-3511 (fax)
john.borchert@usdoj.gov

John Lynch
Chief, Computer Crime & Intellectual Property
Section

_____/s/_____

Rudolfo Orjales
Senior Counsel, Computer Crime & Intellectual
Property Section
Criminal Division, Department of Justice
1301 New York Avenue, N.W.
Washington, DC  20530
(202) 514-1026
(202) 514-6113 (fax)
rudy.orjales@usdoj.gov

Dated: August 13, 2013

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of August, 2013, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of

filing (NEF) to the following:

> Rhodes Beahm Ritenour
> LeClair Ryan PC (Richmond)
> 951 E Byrd St
> PO Box 2499
> Richmond, VA 23218-2499
> 804-916-7106
> Fax: 804-916-7206
> Email: rhodes.ritenour@leclairryan.com
>
> Jeffrey Graham Randall
> Paul Hastings LLP (CA-NA)
> 1117 S California Ave
> Palo Alto, CA 94304
> (650) 320-1850
> Fax: (650) 320-1950
> Email: jeffrandall@paulhastings.com
>
> Kathleen H. Goodhart
> Cooley LLP (CA N/A)
> 101 California St
> 5th Floor
> San Francisco, CA 94111-5800
> 415-693-2012
> Fax: 415-693-2222
> Email: kgoodhart@cooley.com
>
> Stephen C. Neal
> Cooley LLP
> 5 Palo Alto Square
> 3000 El Camino Real
> Palo Alto, CA 94306
> (650) 843-5182
> Fax: (650) 849-7400
> Email: nealsc@cooley.com

By: _____/s/_____
Kosta S. Stojilkovic
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3700
(703) 299-3981 (fax)
kosta.stojilkovic@usdoj.gov